692 So.2d 207 (1997)
MADAY'S WHOLESALE GREENHOUSES, INC. and Henry G. Maday, Appellants,
v.
INDIGO GROUP, INC. and City of Port Orange, Appellees.
No. 96-2458.
District Court of Appeal of Florida, Fifth District.
March 21, 1997.
Rehearing Denied May 2, 1997.
*208 C. David Coffey of Coffey, Tillman & Kalishman, Gainesville, for Appellants.
Bruce R. Bogan of Eubanks, Hilyard, Rumbley, Meier and Lengauer, P.A., Orlando, for Appellee City of Port Orange.
No appearance for Appellee, Indigo Group, Inc.
COBB, Judge.
The sole issue on this appeal is whether the lower court properly entered summary judgment in favor of the City of Port Orange.
Maday's Wholesale Greenhouses, Inc. (Maday), as plaintiff below, alleged that Indigo Group, Inc. (Indigo), developer of the Woodlake Subdivision (Woodlake), raised the elevation of its land adjacent to Maday's property, thereby altering the natural contours of the land so that surface waters that previously flowed across Woodlake now accumulated on Maday's property. Maday requested damages and injunctive relief. The City of Port Orange is now the "dedicated" owner of the roads in Woodlake.
In response to the complaint, Port Orange argued in its affirmative defenses that it was protected by sovereign immunity and that its action in issuing permits to Indigo was a planning level discretionary decision. It also maintained that it did not design or construct the subdivision, nor did it design or construct the drainage systems or roads. According to Port Orange, its only involvement was to review plans for compliance with local and state regulations and to issue permits. Once the subdivision roads were complete, Port Orange accepted their dedication for public use, but made no material alterations to the roads which would change the elevations or drainage.
Maday filed a memorandum in opposition to Port Orange's subsequent motion for summary judgment arguing that the City did not enjoy sovereign immunity from liability for unreasonable use of the property it now owned, i.e., the subdivision roads. Maday cited Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985) for the proposition that when a government takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property. Maday also cited Westland Skating Center, Inc. v. Gus Machado Buick, Inc., 542 So.2d 959 (Fla.1989) to demonstrate that Florida law imposes a duty on adjacent landowners to refrain from *209 interfering with the natural flow of surface water as would cause harm to any adjoining land. In addition, Maday submitted an affidavit from one A.J. "Jay" Brown, a professional engineer, who claimed the "primary reason for the flooding on plaintiff's property results directly from the replacement of fill on the entire Woodlake Subdivision property."
Subsequently, the trial court entered an order granting Port Orange's motion for summary judgment and entered final judgment. The court concluded that a governmental entity enjoys sovereign immunity in circumstances "where the purported failure to maintain is in actuality only the failure to make (or in some cases, the making of) a capital improvement or expenditure."
Based on this, the court indicated that Maday's complaint stating that Port Orange failed to maintain the roads was, in actuality, about the "City's failure to remove, upgrade or modify the road so that the flow of surface waters, allegedly disturbed by the construction of the roads is corrected." Citing Trianon Park Condominium, the court found that Port Orange's decision not to build or modernize a particular improvement was a discretionary judgmental function as was its decision to approve the subdivision plat.
On appeal, Maday argues that it does not allege negligence on the part of Port Orange either in its failure to maintain, or in its failure to make, a capital improvement or expenditure. Rather, it argues that the manner in which Port Orange is using its own property constitutes an unlawful diversion of surface water, representing a continuing trespass and nuisance. Maday argues that, in the event that its factual allegations are sustained, it would be entitled at the very least, to injunctive relief. It contends that a governmental property owner does not enjoy sovereign immunity as against a claim that the government's use of its own property results in an improper diversion of surface water onto private property. We agree.
In Trianon Park, the supreme court made it clear that there is no liability for the failure of government to build, expand, or modernize capital improvements such as buildings and roads. But once the government takes control of property or decides to build, it has the same common law duty as a private person to properly maintain and operate the property.
In Seminole County v. Mertz, 415 So.2d 1286 (Fla. 5th DCA), rev. denied, 424 So.2d 763 (Fla.1982), this court dealt with property damage due to the diversion of surface waters (temporary dam built on abutting property). We noted that Florida law resolved these types of disputes by utilizing the modified civil law rule of surface water (upper owner may improve natural drainage of his land as long as he acts reasonably). In that case, Seminole County claimed that the planning and disbursement of water flow was a discretionary act of government and, therefore, the county was immune from tort liability. We pointed out that Mertz had made no tort claim against the county; the latter was joined as a defendant because Mertz was seeking injunctive relief against the continuing flow of water from the street drains onto the Mertz property. We held that sovereign immunity was not applicable against that county.
In Westland Skating, Seipp Buick (predecessor in interest to Gus Machado Buick) built a wall which diverted water towards the skating center causing damages. The supreme court adopted a "reasonable use rule" to settle controversies and noted this rule's similarity to the "modified civil law rule" as announced by the Fifth District in Mertz.
Finally, in Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980), the Department of Transportation was draining water upon Burnette's land. Burnette claimed a taking or, in the alternative, asked for injunctive relief. The First District treated the diversion of water as a "continuing tort" rather than as a permanent taking, enabling the court to sustain the lower court's injunctive relief. While noting that some condemnation might be appropriate in the future, the district court left the manner and method of relieving the burden on Burnette's land up to the Department of Transportation.
In the instant case, the trial court incorrectly rejected Burnette because of its misperception *210 that this was only a "taking" case. It was not. A cause of action can exist against Port Orange for injunctive relief (or abating a private nuisance) and related damages. Mertz. The fact that Port Orange did not build the roads is not a determinative factor in respect to the operative issues raised below. Hence, the lower court erred in granting summary judgment in favor of the City of Port Orange.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
ANTOON, J., concurs.
GRIFFIN, J., concurs in result only.